```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
OFFSHORE EXPRESS, INC.,                         :
                    Plaintiff,                  :    03 Civ. 4260 (PAC)
                                                :
    -   against -                               :    OPINION
                                                :    AND ORDER
MILBANK, TWEED, HADLEY &                        :
MCCLOY, LLP                                     :
                    Defendant.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Offshore Express, Inc. ("OEI") brings this action alleging that Defendant Milbank, Tweed, Hadley & McCloy, LLP ("Milbank") committed malpractice in its representation regarding (1) a divisive reorganization of McAllister Towing and Transportation, Inc. ("Old MT&T") into an identically-named successor corporation ("New MT&T") and OEI; and (2) an arbitration over the respective tax obligations of the two successor corporations. Defendant now moves for summary judgment dismissing the malpractice claim relating to the reorganization as barred by the statute of limitations. The issue before the Court is whether Milbank's representation in the reorganization and arbitration was one continuous representation in regard to a specific legal matter, or two representations covering separate and distinct matters. If the former, this action is timely; if the latter, the motion for partial summary judgment must be granted.

## FACTUAL HISTORY[1]

### I. The Reorganization Representation

On January 12, 1998, William Kallop ("Kallop"), then President and 50% shareholder of Old MT&T and currently the sole owner of OEI, executed an engagement

---

[1] The facts are derived from the Complaint, the Local Rule 56.1 Statements, and the evidence produced by the parties, and are undisputed unless otherwise indicated. Sources will be cited only when quoted.

letter, prepared by Milbank partner Michael Goroff ("Goroff"), setting the terms of Kallop's retention of the firm to "act as [his] counsel in connection with the proposed division of the stock and assets of [Old MT&T]." Affirmation of Geoffrey J. Ginos ("Ginos Aff."), Exhibit 1.  The letter also stated that:

> I will be the partner in charge of this assignment.  On tax-related matter I will work closely with Dale Ponikvar, who has considerable expertise in transactions of this kind.  One or more associates from within our mergers and acquisitions practice group will assist us, as appropriate.  As the need for specialized expertise arises or more work is required to be done, more staff from within our firm will be added to the team.

Id.  After extensive negotiations during which he was advised by Milbank, Kallop agreed to a Plan of Reorganization and Distribution Split-Off (the "Split-Off Agreement") with the other owners of Old MT&T.  The Split-Off Agreement and supporting documentation, including a Tax Sharing Agreement (the "TSA"), was signed late in the day on July 31, 1998 and became effective on August 3, 1998.

**II. Post-Reorganization Representation**

Milbank's time records show 18 entries relating to the matter "McAllister-Division" between August 3 and September 9, 1998 reflecting work related to the Split-Off Agreement, the bulk of the work occurring from August 3 to August 6.  The next entry occurred on September 29, 1998, when the records indicate that Scott Beechert ("Beechert"), a Milbank attorney, reviewed correspondence from New MT&T for one quarter of an hour.  Kallop testified that he left New York for long periods of time following the closing, and it is undisputed that Milbank received correspondence from New MT&T intended for him.  On October 2, Beechert spent two and three quarter hours

2

reviewing and addressing such correspondence, relating to "sums due under contract." Ginos Aff., Exhibit 2.

On October 15, Beechert spent an hour reviewing correspondence from New MT&T and prepared a letter to Kallop which he sent the following day, October 16. Through the October 15 entry, time was still reported as relating to the "McAllister – Division" matter. Id.  Beechert's letter noted that he was forwarding copies of correspondence Milbank had received "regarding the reorganization of [MT&T and OEI]."  Declaration of Hung G. Ta ("Ta. Dec."), Exhibit E.  Some of this correspondence related to discharging a custodian who had been appointed for Old MT&T during the dispute leading to the reorganization and to New MT&T's termination of benefit package coverage of OEI employees.  Beechert also noted that New MT&T had forwarded numerous invoices and claims for payment, and stated "we need to discuss with you whether these invoices will be, or should be, paid by OEI." Id. The letter concluded by stating, "Please call me at your earliest convenience to discuss these various items and how we are to proceed." Id.

As of October 26, 1998, Milbank began recording entries relating to a matter entitled "Offshore Express, Inc./Tax Dispute."  The first entry under that code indicates that Beechert spent half an hour on "O/C with Goroff; memo to file."  The memo recounted a phone conversation between Kallop and Beechert on October 22. According to the memo, Kallop declined Milbank's offer to take action on the issues noted in the October 16 letter, and said he would handle them and keep Milbank informed.  The disputes between OEI and New MT&T covered in the October 16 letter became the subject of a 1999 omnibus arbitration proceeding.  Milbank did not appear in

3

this proceeding. Kallop testified that OEI retained "another law firm." Ta Dec., Exhibit C at 35-36.

### III. The Tax Arbitration Representation

On November 25, 1998, Kallop and Dale Ponikvar spoke by phone regarding a dispute between New MT&T and OEI over OEI's proper portion, under the TSA, of Old MT&T's federal income taxes for 1997. On December 15, 1998, New MT&T commenced an arbitration against OEI under the provisions of the TSA. Milbank represented OEI in that arbitration and a later, similar arbitration covering the 1998 tax year. No new engagement letter was ever signed by Milbank and Kallop or OEI. The two arbitrations were eventually consolidated, and an arbitrator issued an award for New MT&T on June 12, 2000. The Complaint was filed one day short of the three year limitations period on June 11, 2003.

## DISCUSSION

### I. Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should only be granted if "the nonmoving party 'has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof'." Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party."  McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted).  Summary judgment should not be granted where issues of fact are "genuine," and "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**II.  The Statute of Limitations and the Doctrine of "Continuous Representation"**

The New York statute of limitations for legal malpractice is three years from the date the malpractice occurred. New York Civil Practice Law and Rules § 214. The doctrine of continuous representation, however, tolls the statute of limitations until such time as the allegedly culpable attorney's representation of the client in that particular matter is complete. See Glamm v. Allen, 57 N.Y.2d 87, 94 (1982).   The plaintiff bears the burden of showing an "ongoing representation in connection with the specific matter from which the malpractice arose." Mason Tenders Dist. Council Pension Fund v. Messera, 958 F.Supp. 869, 889 (S.D.N.Y. 1997).  As OEI filed its Complaint just short of three years after the conclusion of the tax arbitration, it presents a timely claim for malpractice occurring during the reorganization only if OEI can show that Milbank's reorganization representation and its arbitration representation concerned the same "specific matter."

The case of Goldman v. Akin, Gump, Strauss, Hauer & Feld, LLP, No. 116952/04, 2006 WL 940625 (N.Y.Sup.Ct. April 10, 2006) is instructive on this point. In

Goldman, the plaintiffs were general partners of seven limited partnerships which owned storage facilities. They hired Akin, Gump to represent them in the sale of the facilities when several limited partners expressed objections to the initial terms of the proposed sale. Id. at *1. Two dissenting limited partnerships commenced an action over the eventual sale, and Akin Gump represented plaintiffs in the ensuing arbitration. Id. at *2. At the time of the initial engagement, Akin, Gump explicitly informed the plaintiffs that "they were available if any further litigation occurred…." Id. Nevertheless, the New York Supreme Court ruled that the representation in the sale and the representation in the litigation were separate matters. Accordingly, the plaintiff could not claim tolling under the continuous representation doctrine. Id.

Kuritzky v. Sirlin & Sirlin, 231 A.D.2d 607, 647 N.Y.S.2d 806 (2d Dep't 1996) suggests a similar result. There, the defendant drafted a lease agreement in 1983 and continued to perform services relating to the agreement until 1990. Kuritzky, 231 A.D.2d at 608. Those services included enforcement of the agreement and advising the tenant of rent increases mandated by the agreement. Id. Starting in 1990, the defendant unsuccessfully litigated on behalf of the plaintiff to correct errors in the lease agreement, and the plaintiff commenced the malpractice action in 1993 after the failure of the litigation. Id. The court ruled that the statute of limitations "was tolled between the accrual of the claim and the discovery of the malpractice in 1990" due to the defendant's continuous representation regarding the lease agreement. Id. Notably, however, the court *did not* toll the statute of limitations for the period of the ensuing litigation, suggesting that litigation services did not involve the same legal matter as the lease agreement itself.

6

Kuritzky, Goldman, and a common sense understanding of the legal profession demonstrate that a corporate transaction and litigation in some way related to that transaction should not be considered the same specific matter, absent unique circumstances.  No such circumstances are apparent here.  Plaintiff's allegations lack even the express anticipation of future litigation representation that proved insufficient in Goldman.  Milbank did not, at the time of the initial engagement, offer to represent Kallop in any ensuing litigation, and there was no particular reason to anticipate that such litigation would occur.  Moreover, the fact that Kallop hired other counsel to litigate many of the issues that arose after the reorganization clearly demonstrates that it was not anticipated that Milbank would handle all ensuing litigation.[2]

N & S Supply, Inc. v. Simmons, 305 A.D.2d 648, 761 N.Y.S.2d 668 (2d Dep't 2003), on which Plaintiff relies, is clearly distinguishable from the present matter.  There, the attorney was retained to draft a buy-out agreement for one of two controlling corporate shareholders, and failed to properly terminate his client's personal guarantee of certain of the corporation's debts.  N & S Supply, 305 A.D.2d at 649.  The attorney continued to perform legal services in 2000 and 2001 in an effort to sever the client's remaining ties to the corporation, and the parties discussed strategy for defending against a lawsuit by a corporate creditor, but the client declined the attorney's offer to represent him in that litigation free of charge.  Id. at 650.  The court's finding of continuous

---

[2] Plaintiff's reliance on cases concerning further care and monitoring is misplaced precisely because whatever care may have been "explicitly anticipated," it clearly did not involve litigation services as opposed to transactional services.  Other cases cited by Plaintiff are similarly inapposite, as they either involve only transactional *or* litigation services, or an initial engagement to provide both services.  See Gravel v. Cicola, 297 A.D.2d 620, 747 N.Y.S.2d 33 (2d Dep't 2002) (no representation in litigation); Macino v. Levin, 268 A.D.2d 507, 702 N.Y.S.2d 357 (2d Dep't 2000) (sole transaction was settlement of matrimonial litigation); Luk Lamellen U. Kupplungbau GmbH v. Lerner, 166 A.D.2d 505, 560 N.Y.S.2d 787 (2d Dep't  1990) (initial engagement to prosecute patent application and enforce patent).

7

representation was, therefore, not dependant on representation in the ensuing litigation, and so did not address the question presented here.

Milbank's reorganization representation ended no later than the October 22, 1998 when Kallop told Beechert that Kallop would handle all matters and keep Milbank informed. The work performed by Milbank prior to that date was arguably the type of follow-up to the transaction found to constitute continuous representation in Kuritzky. After Kallop declined Milbank's offer of continued assistance, however, Milbank's sole representation of OEI involved the separate matter of litigation over the tax dispute. As the continuing representation in regard to the reorganization ended no later than October 1998, almost five years before the filing of the Complaint, Plaintiff's claim is barred by the statute of limitations.[3]

## CONCLUSION

Defendant's motion is GRANTED. Plaintiff's claim for malpractice arising out of the reorganization representation is dismissed. The Clerk of the Court is directed to close out this motion.

Dated: New York, New York
        March 13, 2007

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

---

[3] Plaintiff's invocation of Fed. R. Civ. P. 56(f) is meritless. This litigation commenced more than three and a half years ago, providing Plaintiff with ample opportunity to conduct the discovery necessary to respond to this motion.

representation was, therefore, not dependant on representation in the ensuing litigation, and so did not address the question presented here.

Milbank's reorganization representation ended no later than the October 22, 1998 when Kallop told Beechert that Kallop would handle all matters and keep Milbank informed. The work performed by Milbank prior to that date was arguably the type of follow-up to the transaction found to constitute continuous representation in Kuritzky. After Kallop declined Milbank's offer of continued assistance, however, Milbank's sole representation of OEI involved the separate matter of litigation over the tax dispute. As the continuing representation in regard to the reorganization ended no later than October 1998, almost five years before the filing of the Complaint, Plaintiff's claim is barred by the statute of limitations.[3]

## CONCLUSION

Defendant's motion is GRANTED. Plaintiff's claim for malpractice arising out of the reorganization representation is dismissed. The Clerk of the Court is directed to close out this motion.

Dated: New York, New York
March 13, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

---

[3] Plaintiff's invocation of Fed. R. Civ. P. 56(f) is meritless. This litigation commenced more than three and a half years ago, providing Plaintiff with ample opportunity to conduct the discovery necessary to respond to this motion.

8

Emailed by Chambers on 3/13/07
By: Marlon Ovalles, C.R.D